# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

Mark L. Levy, D.D.S.,
Cynthia S. Levy,
The Mark L. Levy Trust, and
Mark L. Levy, as Administrator of the
Stoneridge Dental Care Retirement Plan
& Trust,

        Plaintiffs,

v.

Cain, Watters & Associates, P.L.L.C.,

        Defendant.

Case No. _____

**2 : 09 CV 723**

Judge **JUDGE FROST**

**MAGISTRATE JUDGE ABEL**

**COMPLAINT**

**JURY DEMAND ENDORSED HEREON**

---

Mark L. Levy, D.D.S. and Cynthia S. Levy ("the Levys"), the Mark L. Levy Trust, and

Mark L. Levy, as Administrator of the Stoneridge Dental Care Retirement Plan & Trust (referred

to collectively as "plaintiffs"), based upon personal knowledge, information and belief, and

based upon the investigation made by their attorneys, allege as follows:

## THE PARTIES

1.     The Levys are, and were at all times relevant to this Complaint, residents of

Columbus, Ohio.  The Levys reside within the Southern District of Ohio, Eastern Division.

Plaintiff Mark L. Levy is a practicing dentist with an office in Gahanna, Ohio.  Cynthia Levy is

employed as the office manager of Dr. Levy's dental practice and is his spouse.

2.     The Mark L. Levy Trust ("Trust") was created under a Declaration of Trust, with

Mark L. Levy as the Grantor and Trustee, on July 18, 1997.  The Trust is governed under the law

- 1 -

of Ohio for all questions "pertaining to the validity, construction and administration" of the Trust.

3.      Stoneridge Dental Care Retirement Plan & Trust ( the "Plan") was established by Mark L. Levy, D.D.S., Inc., and originally effective November 1, 1995. The Plan was established under the U.S. Pension Services, Inc., Defined Contribution Volume Submitter Plan and Trust.  Its restated effective date is January 1, 2002. The Plan Administrator is Mark L. Levy. The address of the Plan Administrator is 925 N. Hamilton Rd., Suite 200, Gahanna, OH 43230.  The Plan is administered in this judicial district.

4.      Cain, Watters & Associates, P.L.L.C. ("Cain Watters") is a Limited Liability Company organized under the laws of Texas.  Cain Watters' principal place of business is in Dallas, Texas.

5.      Cain Watters is a Registered Investment Adviser with the Securities and Exchange Commission (IARD# 111521).  It is also a firm of Certified Public Accountants. According to its web page (cainwatters.com), it provides "comprehensive financial planning, accounting and tax services to over 1,300 clients in 49 states," including Ohio.  Cain Watters primarily serves the dental care provider community.

6.      Cain Watters has a number of affiliates, including:

    a.      III to I Financial Management Research, L.P., a registered investment advisor it owns or controls and in which its principals are control persons;

    b.      III to I IMS Holdings, LLC;

    c.      III to I International Maritime Solutions Cayman, Inc.;

    d.      Shrooms, LLC;

    e.      IMS Capital Partners, LLC;

f.      Dental Community Financial Holding, Ltd.;

g.      III:I Emerging Market Partners, LLC;

h.      III:I Ranch, LLC;

i.      III:I Properties, LLC;

j.      III:I Financial Management Research, LP;

k.      III:I Emerging Market Partners Real Estate Investment Fund I, LP;

l.      III:I Maritime Partners Cayman I, LP;

m.      III:I Property Management, LLC; and

n.      SMD Investments, LLC.

7.      Each of the above mentioned affiliates is a Limited Partnership, Limited Liability Company, investment advisor or private fund used by Cain Watters to generate additional fees and revenues from its clients and others.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 214 of the Investment Advisers Act of 1940 (15 U.S.C. § 80b-14), and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA") (29 U.S.C. § 1132(e)(1)).

9.      This Court has declaratory judgment jurisdiction over this actual controversy pursuant to the provisions of 28 USC § 2201, *et seq.*

10.      This Court also has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1) as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

11.    This Court has supplemental jurisdiction over the remaining causes of action alleged herein pursuant to 28 U.S.C. § 1367.

12.    Venue is proper in this judicial district pursuant to Section 214 of the Investment Advisers Act of 1940 (15 U.S.C. § 80b-14). Cain Watters transacts business within this judicial district by (i) regularly soliciting clients who reside in this judicial district and (ii) servicing those clients through personal visits to this judicial district, (iii) soliciting investments and related financial planning services in person and through the use of interstate mailings, and (iv) sending agreements and related documents to clients located within this judicial district. Certain of the transactions, acts, practices and courses of business alleged in this Complaint occurred in this judicial district. Cain Watters held quarterly telephone conferences with plaintiffs in this judicial district in which they reviewed their investments and made recommendations for additional investments. Cain Watters sent monthly reports and agreements relating to recommended investments to the plaintiffs in this judicial district, which were signed and returned to Cain Watters. Plaintiffs mailed funds from this judicial district to Cain Watters. Cain Watters solicited plaintiffs in this judicial district to attend yearly annual meetings and yearly client meetings. Plaintiffs attended these meetings and were charged fees for attending the annual meetings, which they paid by mailing funds from this judicial district to Cain Watters. Many of the misrepresentations and conflicted advice from Cain Watters, as more fully described below, were conveyed by Cain Watters to plaintiffs by telephone or through the use of interstate mails in this judicial district. Plaintiffs have suffered the injuries complained of herein in this judicial district.

13.    Venue is also proper in this judicial district pursuant to Section 502 of ERISA (29 U.S.C. § 1132(e)(2)), as the Plan is administered in this judicial district.

## GENERAL ALLEGATIONS

14.     Commencing in or about October, 2006, Cain Watters was engaged by plaintiffs to act as an investment adviser to each of them.  Some or all of the plaintiffs entered into an investment advisory agreement with Cain Watters which set forth the terms and conditions pursuant to which investment advice would be rendered to those plaintiffs by Cain Watters.

15.     Cain Watters is a Registered Investment Adviser with the Securities and Exchange Commission. According to its Form ADV, Cain Watters is typically compensated for its services through a percentage of the assets under their management, hourly wages, and established fixed fees.  Plaintiffs paid a yearly advisory fee to Cain Watters for the investment advisory services provided by Cain Watters.

16.     At all times relevant hereto, Cain Watters was a fiduciary to plaintiffs.  As such, its relationship was in the nature of a special confidence or trust.

17.     In its advisory agreement and otherwise, Cain Watters recommended that plaintiffs invest "all, or a major portion of, the client's investments and assets in CWA's recommended investment program," in part because of its purported ability to "monitor all transactions, valuations, and gains and losses, in clients' accounts."

18.     At all relevant times, Cain Watters represented to the plaintiffs (and to others on its web page at: cainwatters.com/about.aspx) that since it was a "'fee only' based firm; our only compensation comes from our clients – we receive no commissions based on our recommendations.  This helps insure that our interests are closely aligned with our clients."

19.     After consultation with plaintiffs, Cain Watters prepared an "Investment Policy Statement," which set forth the "basic tenets" pursuant to which Cain Watters stated that it would manage their accounts.  These "basic tenets" included: (a) weighing risk against expected

returns; (b) market efficiency; (c) the importance of asset allocation; (d) the importance of diversification; and (e) the importance of keeping operating costs low. The Investment Policy Statement also stated that "picking individual securities and timing the purchase or sale of investments outside of a diversified portfolio in the attempt to beat the market are highly unlikely to increase long-term investment returns; they also can significantly increase portfolio operating costs." The Investment Policy Statement further stated that "it is, therefore, unlikely that any portfolio will succeed in consistently beating the market."

20.    Cain Watters recommended an asset allocation for the Levys' accounts in an 80/20 asset allocation (80% of the portfolio is invested in equities and 20% in fixed-income securities), which was far too risky for their investment objectives and tolerance for risk.

### T Bank and T Bank Pooled Funds

21.    Based solely upon the recommendation of Cain Watters, plaintiffs invested significant assets in privately branded funds held at T Bank, NA.

22.    From October, 2006 through April, 2009, the Levys invested $802,297.57 in these privately branded funds. When they liquidated their account in April, 2009, they incurred a loss of $121,590.97, representing a total internal Rate of Return of -45.639%.

23.    From October, 2006 through April, 2009, the Trust invested $1,308,466.61 in these privately branded funds. When it liquidated its account in April, 2009, it incurred a loss of $509,782.40, representing a total internal Rate of Return of -39.957%.

24.    From October, 2006, through April, 2009, the Plan invested $1,324,605.40 in these privately branded funds. When it liquidated its account in April, 2009, it incurred a loss of $433,011.29, representing a total internal Rate of Return of -39.934%.

25.    T Bank, NA is based in Dallas, Texas, and began operations on November 2, 2004.

26.    At all times relevant hereto, Darrell Cain ("Cain"), was and is the Chief Executive Officer of Cain Watters. Cain is the owner of in excess of 50% of the shares of Cain Watters and is a control person of Cain Watters. Cain is also an investor and founding member of T Bank.

27.    Cain also served as a Director of First Metroplex Capital, Inc. ("First Metroplex"), the parent company of T Bank.

28.    According to its 2005 Annual Report, First Metroplex was incorporated on December 23, 2002 for the purpose of holding the common stock of T Bank. For the period from December 23, 2002 to November 2, 2004, First Metroplex was essentially a "promoter" of T Bank, engaging in the preparation of applications for regulatory approvals, raising capital, financial planning, and systems development, acquisition of equipment and facilities and recruiting activities.

29.    In 2005, First Metroplex entered into an advisory services contract with III:1 Financial Management Research, LP ("FMR"). Darrell Cain is a control person of FMR and the owner of in excess of 25% of its shares. Michael Watters ("Watters"), another principal of Cain Watters, is also a control person of FMR and the owner of in excess of 25% of its shares. FMR is controlled by, and is under the common control, of Cain Watters. Darrell Cain resigned from the Board of First Metroplex sometime in 2005. This was supposedly "to avoid any potential conflict of interest with his new venture, III:1 Financial Management Research, LP."

30.    While Cain's resignation may have resolved the conflict between T Bank and Cain, it had no effect whatsoever on the fact that Cain Watters had a direct conflict between the

interests of its clients and the benefits that would accrue to T Bank and to FMR if its clients followed its recommendations to invest in the privately branded funds held at T Bank.

31.    On February 8, 2006, the Office of the Comptroller of the Currency approved an application by T Bank to establish trust powers.  T Bank proposed to initially offer traditional fiduciary services primarily to clients of Cain Watters.  T Bank, Cain Watters, and FMR have entered into an advisory services agreement related to the trust operations of T Bank.

32.    Cain Watters, as an independent investment advisor, used T Bank as custodian and trustee of the assets of its clients which were invested in these privately branded funds despite the fact that T Bank had only a brief operating history, "*a short history of experiencing profits*" and "accumulated deficit account of approximately $3.1 million." *See* T Bancshares Form 10-K filed March 31, 2009 (for the period ending December 31, 2008), Item 1A "Risk Factors" (Emphasis in the original).

33.    T Bank acts as a trustee and offers fiduciary services primarily to clients of Cain Watters.  Pursuant to an agreement between T Bank, Cain Watters and FMR, T Bank pays an advisory fee to Cain Watters and to FMR, who act as investment managers for the privately branded funds.

34.    The amount of fees generated by Cain Watters and its affiliate from its clients' investments in the T Bank privately branded funds is significant.  Upon information and belief, in 2008, advisory fees of $8.5 million were paid by T Bank to Cain Watters and its affiliate, FMR.

35.    Cain also benefited personally from steering business to T Bank.    Upon information and belief, at all times relevant hereto, Cain owned 23,000 shares of stock in T Bank or its predecessor company, representing 1.09% of the outstanding stock in that class.

36.    Cain Watters, as a fiduciary and "independent" investment adviser, recommended to plaintiffs that they invest in the privately branded T Bank funds, which required hiring and paying a fee to T Bank as Trustee and custodian of their portfolio. T Bank charges 1% for trading, custody, and trustee services, a portion of which, as set forth above, it pays to Cain Watters and its affiliate, FMR, as fund advisors. Only Cain Watters' clients are permitted to invest in these privately branded funds.

37.    These pooled funds were established by T Bank through a plan of common trust funds for personal trusts with an effective date of July 1, 2006.

38.    Each of the pooled funds is an unregistered, open-ended investment company. The funds were created to provide for the collective investment and reinvestment of assets contributed by participating trusts.

39.    These privately branded funds at T Bank are not registered with the SEC and are not subject to the same level of oversight as publicly-traded, registered funds.

40.     Prior to entering into its fee sharing agreement with T Bank for fund management services, neither Cain Watters nor FMR had meaningful experience in managing pooled funds or in providing investment advisory services to such funds

41.    Plaintiffs were not told that the investment advisor to the funds was an affiliate of Cain Watters, with little experience as a fund advisor. Instead, they were told that Cain Watters carefully screened and selected independent managers for these funds.

42.    Plaintiffs were told by Cain Watters that these privately branded funds were "not subject to the whims of the market," because the investors in these funds would not "panic and redeem them in a down market."

43.     Plaintiffs were not told that these funds were not SEC registered or that they were not audited by a major accounting firm or that the relatively small size of the assets of these funds (under $1 billion) subjected these funds to significant risk in the event of any substantial redemptions.

44.     Plaintiffs were not told that the total assets of these funds were a small fraction of the assets of large, publicly traded funds.

45.     Plaintiffs were not told that these funds had limited liquidity – unlike publicly-traded funds.

46.     Plaintiffs were not told that T Bank was a small bank with limited operating history and a very limited history of experiencing profits. They also were not told that clients of Cain Watters account for most (if not all) of the trust business of T Bank.

47.     Plaintiffs were not told that the primary motivation for recommending these funds to plaintiffs and others was (i) to increase the investment management and advisory fees which would be paid to Cain Watters and its affiliate, FMR, by T Bank; and (ii) to increase the value of the stock in T Bank held by Cain.

48.     Plaintiffs were not told that it was exceedingly unlikely that the T Bank funds would equal (much less exceed) indexed benchmarks. In fact, during the period of plaintiffs' investment in these funds, its performance significantly *underperformed* these benchmarks.

49.     Plaintiffs were not told that, unlike publicly traded mutual funds, there was no public market for the privately branded T Bank funds, thereby making the determination of the market price of these funds virtually impossible to compute.

50.     Plaintiffs were not told that the only appropriate way to value the shares in the T Bank funds was to value them at book value.

51.    Plaintiffs were not told that a prudent man, acting in a like capacity, and familiar with investment matters, would not invest, or recommend investments in, the privately branded T Bank funds.

52.    Plaintiffs were not told that investments in the privately branded T Bank funds caused them to incur excessive and unreasonable fees.

53.    The privately branded funds engaged in the conduct that the Investment Policy Statement indicates was unlikely to increase long term investments results, including market timing and strategic asset allocation.  The funds were all actively managed, which is directly contrary to the statement in the Investment Policy Statement that "it is, therefore, unlikely that any portfolio will succeed in consistently beating the market."  To be consistent with this "basic tenet," the pooled funds should have all been indexed to their markets.

### The Limited Partnership Investments

54.    Cain Watters also recommended that plaintiffs (including the Plan) invest in at least four limited partnerships: III:I Emerging Markets Partners Real Estate Fund, III to I Maritime Partners Cayman I, L.P., Dental Community Financial Holdings, Ltd., and the Family Limited Trust.

55.    Based solely upon the recommendation of Cain Watters, the Levys and the Trust invested an aggregate of $50,000 in the III:I Emerging Markets Partners Real Estate Fund, $30,000 in Dental Community Financial Holdings, Ltd. and $150,000 in III to I Maritime Partners Cayman I, L.P.

56.    Based solely upon the recommendation of Cain Watters, the Plan invested $121,860 in the Family Limited Trust.

57.     Cain Watters or its affiliates serve as the General Partner for each of these partnerships and derive significant fees for purported services rendered to the limited partnerships.

58.     Limited partnerships as a group have very unique risk factors. Limited partnerships are typically highly illiquid investments that often carry a greater degree of risk to an investor.

59.     The limited partnerships are fraught with serious conflicts of interests between Cain Watters and the investors in them, including plaintiffs.

60.     Plaintiffs were told that these limited partnership investments "had the potential to be big."

61.     The Plan was not told that investments in the limited partnerships were a violation of Section 404(a) of ERISA, 29 U.S.C. § 1104(a).

62.     The Plan was not told that investments in the limited partnerships were "prohibited transactions" in violation of Section 406(a) and 406(b)(1) of ERISA, 29 U.S.C. § 1104(a).

63.     Plaintiffs were not told that:

    a.     The General Partners and other affiliates would be receiving significant and excessive fees;

    b.     Partnership funds would be used to make loans to affiliates;

    c.     The limited partnerships would engage in transactions with affiliates;

    d.     Investments in the limited partnerships would cause them to incur excessive and unreasonable fees;

e.   The primary purpose for setting up and recommending investments in the limited partnerships was to permit Cain Watters and its affiliates to generate excessive fees and to reap other benefits at the expense of the limited partners;

f.   A prudent man, acting in a like capacity, and familiar with investment matters, would not invest, or recommend investments in, the limited partnerships.

64.   The limited partnerships in which Plaintiffs were advised to invest are replete with suspicious affiliated transactions which violate the fiduciary duty of the General Partner to the Limited Partners, including plaintiffs.

65.   A review of the financial statements indicates that plaintiffs' investments in each of the limited partnerships have lost all, or most, of their value due to mismanagement, conflicts of interest, transactions with affiliates which were entered into for the benefit of Cain Watters and its affiliates to the detriment of the limited partners, and related factors.

66.   The recommendations by Cain Watters that plaintiffs invest in the privately branded funds held at T Bank and in the Limited Partnerships were made primarily to benefit Cain Watters and its affiliates. These recommendations did not reflect independent, objective advice that was in the best interest of the plaintiffs or of other clients of Cain Watters.

**The Dental Community Financial Holdings, Ltd. Partnership**

67.   Like all of the limited partnerships in which Plaintiffs were advised to invest, the Dental Community Financial Holdings, Ltd. Partnership ("DCFH") is replete with suspicious affiliated transactions which violate the fiduciary duty of the General Partner to the Limited Partners and Cain Watters' fiduciary duties as an investment adviser to the plaintiffs.

68.     According to its 2006 Annual Report, DCFH is a Texas limited partnership. It was formed in Dallas, Texas on November 1, 2005.

69.     According to its 2006 Annual Report, DCFH is "organized to loan funds or acquire an equity or other financial interest in entities that will provide services to clients of Cain, Watters & Associates, PC."

70.     Also according to its 2006 Annual Report, DCFH "has 339 Class A limited partners and one general partner, Dental Community Management, Inc., which consists of two individuals."

71.     According to its 2006 Annual Report, the "owners of Cain, Watters, and Associates, PC (CWA) are the owners of Dental Community Management, Inc., (DCM) the general partner of the Partnership."

72.     According to its 2006 Annual Report, "[d]uring the year ended December 31, 2006, the Partnership transferred $50,000 to CWA in exchange for a note receivable bearing 8% interest. The note was repaid in full to the Partnership prior to December 31, 2006."

73.     According to its 2006 Annual Report, "[o]ne of the individual owners of Dental Community Management, Inc., DCM, also has a $10,000 Class A limited partnership interest in the Partnership."

74.     According to its 2006 Financial Statement, "[d]uring the year ended December 31, 2006, the Partnership transferred $9,870,000 to Financial Management Research, LP (FMR) in exchange for notes bearing 8% interest. The owners of FMR are the owners of Dental Community Management, Inc. (DCM)." As noted above, DCM is also a Cain Watters affiliate.

75.     According to its 2006 Annual Report, DCFH "has a note receivable from FRM of $6,945,438 at December 31, 2006. In addition, the Partnership has accrued interest receivable of

$1,035,074 from FMR at December 31, 2006." As mentioned above, FMR is an affiliate of Cain Watters.

76.    All of these related party transactions, and others, between these Cain Watters affiliates were entered into for the benefit of Cain Watters and its affiliates to the detriment of the limited partners, including plaintiffs.

### The III to I Maritime Partners Cayman I Limited Partnership

77.    Like all of the Limited Partnerships in which Plaintiffs were advised to invest, the III to I Maritime Partners Cayman I, LP ("Maritime Partners") is replete with suspicious affiliated transactions which violate the fiduciary duty of the General Partner to the Limited Partners and Cain Watters' fiduciary duties as an investment adviser to the plaintiffs.

78.    Maritime Partners is "a Cayman Islands limited partnership formed October 18, 2006 for the primary purposes of acquiring, managing, and operating maritime vessels through subsidiary companies formed and controlled by III to I Maritime." *See* Maritime Partners Consolidated Financial Report, for the year ended December 31, 2007 and for the period from October 18, 2006 (date of inception) through December 31, 2006.

79.    According to its 2007 Consolidated Financial Report the General Partner of this limited partnership is III to I International Maritime Solutions Cayman, Inc. ("Maritime Solutions.")

80.    Maritime Solutions is another Cain Watters affiliate.

81.    The 2007 Consolidated Financial Report also indicates that Maritime Partners advanced $3,200,000 to an affiliate of the General Partner. The advance bears an interest rate of 8% and matures in January of 2018.

82.     The 2007 Consolidated Financial Report also indicates that Maritime Partners has certain dealings with FLTC Fund I, which is another entity controlled by Cain Watters.

83.     The 2007 Consolidated Financial Report states that in December, 2007, Maritime Partners "transferred to FLTC Fund I, an affiliate of the Partnership, its interest in two KGs in exchange for cash" in the amount of €3,957,465 ($5,692,813).   KG is an abbreviation for Kommanditgesellschaft (the German name for a limited partnership business entity).

84.     Also according to the 2007 Consolidated Financial Report, Maritime Partners "held an interest in an additional KG planned for transfer to FLTC Fund I." In January 2008, Maritime Partners "transferred the interest in its KG to FLTC Fund I in exchange for cash" in the amount of €2,119,478 ($3,024,920).

85.     According to its 2008 Consolidated Financial Report, Maritime Partners paid "deposits in connection with our potential acquisition of a chemical tanker" through III to I IMS Holdings, LLC ("IMS Holdings"). IMS Holdings is a Cain Watters affiliate.

86.     According to the Maritime Partners 2008 Consolidated Financial Report, IMS Holdings is "the sole shareholder of" Maritime Solutions, the General Partner of Maritime Partners.

87.     The 2008 Consolidated Financial Report states that Maritime Partners "had $4,276,164 and $100,690 ... due from IMS Holdings resulting from short-term advances [Maritime Partners] made to IMS Holdings relating to the acquisition of the chemical tanker."

88.     The 2008 Consolidated Financial Report states that Maritime Partners retained Dental Community Management, Inc. ("DCMI"), "an entity owned in part by Jason M. Morton, a director and the Chief Financial Officer of our General Partner [Maritime Solutions], to perform administrative and professional services."

89.    Jason M. Morton is thus affiliated with Cain Watters through his position with Maritime Solutions and ownership interest in DCMI.

90.    For his services, Mr. Morton's company was paid up to $100,000 per month.

91.    The Services Agreement between Maritime Partners and DCMI runs through December 31, 2013 "with automatic one-year renewal periods thereafter."

92.    According to the 2008 Consolidated Financial Report, Maritime Partners obtained a loan of $1,000,000 from III:I Emerging Market Partners Real Estate Investment Fund I, L.P., another one of Cain Watters' limited partnerships in which it serves as the General Partner. According to this Report, "[t]his loan, which is unsecured, bears an interest rate of 12% and matures in October 2010. In connection with this loan, we paid a $20,000 commitment fee to [III:I Emerging Market Partners Real Estate Investment Fund I, L.P.] upon execution of the promissory note."

93.    According to the 2008 Consolidated Financial Report, Maritime Partners also obtained a loan in December of 2008 in the amount of $250,000 from another Cain Watters affiliate, III to I Financial Management Research, L.P. According to this Report, "[t]his loan, which is unsecured, bears an interest rate of 12% and matures in December 2018."

94.    According to the 2008 Consolidated Financial Report, Maritime Partners obtained yet another loan in the amount of $3,200,000 from III:I Emerging Market Partners, L.L.C in 2007.

95.    III:I Emerging Market Partners, L.L.C is also a Cain Watters affiliate. "This loan, which is unsecured, bears an interest rate of 12% and matures in April 2017." This loan was "repaid in full" in 2007.

96.    According to the 2008 Consolidated Financial Report, Maritime Partners "had $187,373 due to an affiliate of the General Partner resulting from a short-term advance. This loan was repaid in full in March 2007."

97.    All of these related party transactions, and others, between these Cain Watters affiliates were entered into for the benefit of Cain Watters and its affiliates to the detriment of the limited partners, including plaintiffs.

### The III:I Emerging Market Partners Real Estate Investment Fund I Partnership

98.    Like all of the limited partnerships in which Plaintiffs were advised to invest, III:I Emerging Market Partners Real Estate Investment Fund I, LP ("Emerging Market Partners") is replete with suspicious affiliated transactions which violate the fiduciary duty of the General Partner to the Limited Partners and Cain Watters' fiduciary duties as an investment adviser to the plaintiffs.

99.    According to its 2007 Consolidated Annual Report, Emerging Market Partners is "a Texas limited partnership formed in Dallas, Texas on August 30, 2006. The Partnership owns 99% interest in eight Texas limited partnerships."

100.    The 2007 Consolidated Annual Report indicates Emerging Market Partners "maintains eleven cash accounts with one financial institution." This single financial institution is believed to be T Bank.

101.    The 2007 Consolidated Annual Report acknowledges the risk of maintaining all of its cash at one bank, but states that "[m]anagement believes the financial strength of the U.S. institution minimizes the credit risk related to the Fund's deposits." This despite the fact that T Bank, as stated above, had only a brief operating history, "a short history of experiencing profits" and "accumulated deficit account of approximately $3.1 million."

102.    According to the 2007 Consolidated Annual Report, Emerging Market Partners used T Bank for a $20,000,000 line of credit, and almost $17,000,000 had been drawn on the line of credit, earning T Bank 1% over prime in interest. This loan is collateralized by "money market accounts of the partnership." As indicated above, Cain is a shareholder in T Bank.

103.    Emerging Market Partners drew on this line of credit despite the fact that it held over $19,500,000 of cash and equivalent investments. The primary reason for entering into this transaction was to benefit T Bank and its shareholders, including Cain, at the expense of the limited partners.

104.    According to the Consolidated Annual Report, Emerging Market Partners also has several million dollars worth of mortgage notes payable to T Bank:

    a.    $1,400,000 with interest at the rate of 8.25% per annum, with principal payment due July 24, 2008;

    b.    $1,062,000 with interest at the rate of 8.25% per annum, with principal payment due October 26, 2008;

    c.    $245,000 with interest at the rate of 8.25% per annum, with principal payment due December 14, 2008;

    d.    $242,500 with interest at the rate of 8.25% per annum, with principal payment due December 20, 2008;

    e.    $511,210 with interest at the rate of 8.25% per annum, with principal payment due July 27, 2009;

    f.    $145,000 with interest at the rate of 7.75% per annum, with principal payment due October 31, 2009;

g.      $594,490 with interest at the rate of 8.25% per annum, with principal
payment due January 4, 2009.

105.    Additionally, the 2007 Consolidated Annual Report states that Emerging Market
Partners did business with an entity named III:I Emerging Market Partners, LLC (EMP LLC).
Two of the three members of EMP LLC are owners of III:I Property Management LLC (another
Cain Watters affiliate), the General Partner of Emerging Market Partners (including Cain
Watters).

106.    Emerging Market Partners engaged in several transactions with EMP LLC,
including:

a.      Purchase of properties from EMP LLC totaling $8,408,858;

b.      Transfer of $6,839,643 to EMP LLC in exchange for promissory notes;
and

c.      Payment of management fees in the amount of $781,712 to EMP LLC.

107.    The 2007 Consolidated Annual Report also states that Emerging Market Partners
did business with an entity named SMD Investments LLC (SMD). Two of the three members of
EMP LLC are owners of III:I Property Management LLC (another Cain Watters affiliate), the
General Partner of Emerging Market Partners (including Cain Watters).

108.    Emerging Market Partners "received property contributions of $776,018 from
SMD for its capital contribution to the Partnership" in 2006.

109.    All of these related party transactions, and others, between these Cain Watters
affiliates were entered into for the benefit of Cain Watters and its affiliates to the detriment of the
limited partners, including plaintiffs.

**The Family Legacy Trust Company Partnership**

110.    The Family Legacy Trust Company ("FLTC") is a limited partnership.

111.    According to its Financial Report dated September 30, 2008, in December of 2007, FLTC acquired from Maritime Partners, a Cain Watters affiliate, its interest in two Kommanditgesellschafts (the German name for a limited partnership business entity; "KGs") in exchange for cash in the amount of €3,957,465 ($5,692,813).

112.    In January of 2008, FLT acquired the interest in another KG from Maritime Partners in exchange for cash in the amount of €2,120,605 ($3,026,528) which "approximated" Maritime Partners' carrying value of the KG on the date of the transfer.

113.    All of these related party transactions, and others, between these Cain Watters affiliates were entered into for the benefit of Cain Watters and its affiliates to the detriment of the limited partners, including plaintiffs.

<b>FIRST CLAIM</b><br>
<b>(Violation of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–1 <i>et seq.</i>)</b>

114.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

115.    Cain Watters is registered with the Securities and Exchange Commission as an investment adviser (IARD# 111521).

116.    Cain Watters is an "investment adviser" under the Investment Advisers Act of 1940 § 202(a)(11) (15 U.S.C. § 80b-2(a)(11)).  Cain Watters, for compensation, engages in the business of advising plaintiffs, among other customers, either directly or through publications or writings, as to the value of investments or as to the advisability of investing in, purchasing, or selling investments, or who, for compensation and as part of a regular business, issues or promulgates analyses or reports concerning investments.

117.    Plaintiffs paid Cain Watters "compensation" for its investment advisory services and for management of their accounts.

118.    Plaintiffs are investment advisory clients of Cain Watters.

119.    The Levys entered into an "investment advisory contract" with Cain Watters. Investment Advisers Act of 1940 § 205 (15 U.S.C. § 80b-5). The Mark L. Levy Trust, and Stoneridge Dental Care Retirement Plan & Trust received investment advice from Cain Watters.

120.    Cain Watters, by engaging in the conduct described above, violated Section 206 of the Investment Advisers Act of 1940 § 206 (15 U.S.C. § 80b-6).

121.    Specifically, Cain Watters, by engaging in the conduct described above, directly or indirectly, by use of the mails and other means or instrumentalities of interstate commerce:

      a.    with scienter, employed devices, schemes and artifices to defraud plaintiffs;

      b.    engaged in transactions, practices, or courses of business which operate as a fraud or deceit upon plaintiffs;

      c.    engaged in transactions, acts, practices, and courses of business which were fraudulent, deceptive, or manipulative.

122.    By engaging in the conduct described above, Cain Watters violated the Advisers Act, 15 U.S.C. §§ 80b-6(1), 80b-6(2), and 80b-6(4).

123.    As a result of Cain Watters' violations of § 206 of the Advisers Act, plaintiffs are entitled to rescind any investment advisory contract between any of them and Cain Watters and restitution of any consideration given under contract or otherwise. Investment Advisers Act of 1940 § 215 (15 U.S.C. § 80b-15).

124.    Plaintiffs' purchases, investments and/or acquisitions of securities from or through Cain Watters are void. Investment Advisers Act of 1940 § 215 (15 U.S.C. § 80b-15).

## SECOND CLAIM
### (Declaratory Relief under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201)

125.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

126.    There exists an actual, substantial, justiciable controversy between plaintiffs and Cain Watters.

127.    Plaintiffs seek a declaratory judgment that their transactions with Cain Watters are void. Plaintiffs ask the Court to declare, determine, and find that Cain Watters committed the violations of the Investment Advisors Act alleged in this Complaint and that they are entitled to rescind their investment advisory contract(s), to a declaration that all such agreements are void, and to restitution of any consideration given under these contracts or otherwise.

## THIRD CLAIM
### (Common Law Breach of Fiduciary Duty)

128.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

129.    Plaintiffs entrusted their assets to Cain Watters and reposed confidence in Cain Watters with respect to the management of those assets.

130.    Cain Watters's superior position as to the management and control of those assets resulted in Plaintiffs' reposing trust and confidence in Cain Watters.

131.    Cain Watters held itself out as providing superior client investment services.

132.    Plaintiffs reasonably and foreseeably relied on such representations, and trusted in Cain Watters's purported expertise and skill.

133.    Cain Watters owed fiduciary duties to plaintiffs with respect to the management and protection of plaintiffs' assets entrusted to Cain Watters.

134.    Cain Watters was obligated to:

    a.    fully and fairly disclose all material facts as well as an affirmative obligation to employ reasonable care to avoid misleading plaintiffs; deal fairly and honestly with plaintiffs; act with loyalty and good faith towards plaintiffs; manage and operate the investments of plaintiffs exclusively for the best interest of plaintiffs; make recommendations and execute transactions in accordance with the goals, investment objectives, and permissible degree of risk; and

    b.    oversee the investments of plaintiffs' assets to assure they were maintained in a prudent and professional manner.

135.    Cain Watters breached their fiduciary duties to plaintiffs by failing to:

    a.    act with reasonable care in ascertaining that the information set forth in the written materials provided to plaintiffs was accurate;

    b.    invest plaintiffs 'assets with adequate diligence or monitoring;

    c.    recommend to plaintiffs investments that were in their best interest instead of investments that primarily benefited Cain Watters and its affiliates; and

    d.    Make recommendations for investments by plaintiffs that were free of conflicts of interest between Cain Watters, its affiliates, T Bank and plaintiffs.

136.    As a result of Cain Watters' breach of their fiduciary duties, plaintiffs have incurred substantial losses in their investments and have been forced to pay excessive fees for unsuitable and underperforming investments.

137.    The damages suffered by plaintiffs were a direct and foreseeable result, proximately caused by Cain Watters' breach of its fiduciary duties.

138.    By reason of the foregoing, Cain Watters is liable to plaintiffs in an amount to be determined at trial.

### FOURTH CLAIM
### (Common Law Negligence)

139.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

140.    Cain Watters had a special relationship with plaintiffs that gives rise to a duty to exercise due care in the management of their assets.

141.    Cain Watters failed to exercise due care, and acted in reckless disregard of their duties, thereby injuring plaintiffs.

142.    Cain Watters breached its duty to exercise the degree of prudence, caution, and good business practice that would be expected of any reasonable investment professional.

143.    As a direct and proximate result of Cain Watters' breach of its duties with respect to plaintiffs' assets entrusted to Cain Watters, plaintiffs have lost a substantial portion of their assets.

144.    By reason of the foregoing, Cain Watters is liable to plaintiffs in an amount to be determined at trial.

**FIFTH CLAIM**
**(Breach of Fiduciary Duty in Violation of the**
**Employee Retirement Income Security Act of 1974 (ERISA)**
**as to Plaintiff Mark L. Levy, as Administrator of the**
**Stoneridge Dental Care Retirement Plan & Trust)**

145.    Mark L. Levy, as Administrator of the Stoneridge Dental Care Retirement Plan &
Trust repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth
herein.

146.    The Plan is a "pension plan" within the meaning of Section 3(2) of ERISA, 29
U.S.C. § 1002(2).

147.    At all times material herein, Cain Watters was a fiduciary with respect to the Plan
within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

148.    At all times material herein, Cain Watters was an "investment manager" with
respect to the Plan within the meaning of Section 3(38) of ERISA, 29 U.S.C. § 1002(38).  Cain
Watters had the power to manage, acquire, or dispose of any asset of the Plan; is registered as an
investment adviser under the Investment Advisers Act of 1940; and has acknowledged in writing
and otherwise that it is a fiduciary with respect to the Plan.

149.    Cain Watters, for compensation, rendered investment advice with respect to the
assets held in the Plan.

150.    The Plan paid Defendant "compensation" for its investment advice with respect to
the Plan.

151.    Cain Watters engaged in conduct in violation of Section 404(a) of ERISA, 29
U.S.C. § 1104(a).

152.    Specifically, Cain Watters failed to discharge its duties solely in the interest of the
Plan by recommending that Plan assets be invested in the T Bank privately branded funds and in

the Family Limited Trust. Each of these recommended investments was improper, unsuitable and imprudent.

153.    As a result, Cain Watters failed to act with the care, skill, prudence, and diligence that a prudent investment adviser would use in similar circumstances.

154.    Cain Watters breached its fiduciary obligations to the Plan and to the Plan participants by profiting from the investments it recommended to the Plan at the expense of, and to the detriment of, the Plan and its participants and beneficiaries

155.    Pursuant to Section 409(a) of ERISA, 29 U.S.C. § 1109(a), Cain Watters is required to reimburse the Plan for any losses resulting from its violation of Section 404(a) of ERISA, 29 U.S.C. § 1104(a), and to restore to the Plan any profits which have been made through its use of assets of the Plan, in an amount to be determined at trial.

156.    Mark L. Levy, as Administrator of the Plan, also seeks other equitable or remedial relief as the Court may deem appropriate, including, but not limited to, rescission of the transactions at issue. Section 409 of ERISA, 29 U.S.C. § 1109(a).

157.    Mark L. Levy, as Administrator of the Plan, requests that it be awarded its costs of this action and reasonable attorney's fees pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

## SIXTH CLAIM
### (Engaging in Prohibited Transactions in Violation of the Employee Retirement Income Security Act of 1974 (ERISA) as to Plaintiff Mark L. Levy, as Administrator of the Stoneridge Dental Care Retirement Plan & Trust)

158.    Mark L. Levy, as Administrator of the Stoneridge Dental Care Retirement Plan & Trust repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

159.    Cain Watters was a "party in interest" to the Plan because it was a fiduciary to the Plan and a person providing services to the Plan. 29 USCS § 1002(14).

160.    By causing the Plan to engage in transactions that it knew or should have known would result in dealings between the Plan and a party in interest, Cain Watters engaged in conduct in violation of Section 406(a) of ERISA, 29 U.S.C. § 1106(a). Specifically, Cain Watters knew or should have known that the investments it recommended to the Plan involved furnishing services to the Plan from a party in interest and the transfer to, or use by or for the benefit of, a party in interest of assets of the Plan.

161.    Cain Watters also engaged in conduct in violation of Section 406(b)(1) of ERISA, 29 U.S.C. § 1106(b) by: (i) dealing with the assets of the plan in its own interest or for its own account, (ii) acting in transactions involving the Plan on behalf of a party whose interests were adverse to the interests of the Plan or its participants and beneficiaries and (iii) receiving consideration for its own personal account from parties dealing with the plan in connection with transactions involving the assets of the Plan.

162.    Pursuant to Section 409 of ERISA, 29 U.S.C. § 1109, Cain Watters is required to reimburse the Plan for any losses resulting from these prohibited transactions, and to restore to the Plan any profits which have been made through its use of assets of the Plan, in an amount to be determined at trial.

163.    Mark L. Levy, as Administrator of the Plan, also seeks other equitable or remedial relief as the Court may deem appropriate, including, but not limited to, rescission of the transactions at issue. Section 409 of ERISA, 29 U.S.C. § 1109(a).

164.    Mark L. Levy, as Administrator of the Plan, requests that it be awarded the costs of this action and reasonable attorney's fees pursuant to Section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g)(1).

### SEVENTH CLAIM
### (Violations of the Ohio Securities Act)

165.    Plaintiffs repeat and re-allege the allegations contained in the paragraphs above as if fully set forth herein.

166.    Cain Watters filed a Form ADV with the SEC and caused a copy to be sent to the Ohio Division of Securities, and, upon information and belief, has paid the notice filing fee required under R.C. § 1707.17.  Ohio Securities Act, R.C. § 1707.141(B)(1).

167.    Cain Watters is an "investment adviser" under the Ohio Securities Act, R.C. § 1707.01(X)(1).  Cain Watters, for compensation, engages in the business of advising Plaintiffs, among other clients resident in Ohio, either directly or through publications or writings, as to the value of investments or as to the advisability of investing in, purchasing, or selling investments, or who, for compensation and as a part of a regular business, issues or promulgates analyses or reports concerning investments.

168.    Plaintiffs paid Cain Watters "compensation" for its investment advisory services and for management of their accounts.

169.    Plaintiffs are investment advisory clients of Cain Watters.

170.    Cain Watters, by engaging in the conduct described above, violated the Ohio Securities Act, R.C. § 1707.44.

171.    Specifically, Cain Watters, by engaging in the conduct described above, directly or through publications or writings:

      a.      knowingly made false representations concerning material and relevant facts in oral statements or in prospectuses, circulars, descriptions, applications or written statements for the purpose of advising, for compensation, Plaintiffs as to the value of investments or as to the advisability of investing in, purchasing, or selling investments;

      b.      employed devices, schemes and artifices to defraud Plaintiffs;

      c.      engaged in acts, practices, or courses of business which operated as fraud or deceit upon Plaintiffs;

      d.      engaged in acts, practices, and courses of business which were fraudulent, deceptive, or manipulative.

172.    By engaging in the conduct described above, Cain Watters violated the Ohio Securities Act, R.C. §§ 1707.44(B)(5), 1707.44(G), and 1707.44(M)(1)(a)(b)(d).

173.    As a direct and proximate result of Cain Watters's violations of the Ohio Securities Act, R.C. § 1707.44, Plaintiff is entitled to damages, including consideration paid for the advice of Cain Watters, any losses it incurred in reliance upon this advice, and all court costs in an amount to be determined at trial. Ohio Securities Act, R.C. § 1707.42(A)-(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendant as follows:

1.    Rescission of any and all the investment advisory contracts between plaintiffs and Cain Watters and restitution to them of any consideration given under these contracts or otherwise;

2.    A declaration that Cain Watters committed the violations of the Investment Advisers Act alleged in this Complaint and a finding that any and all such investment advisory agreements are void and rescinded;

3.    Compensatory damages in an amount to be determined at trial;

4.   Punitive damages in an amount to be determined at trial for the wrongful acts complained of;

5.   Costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

6.   Interest to the extent available under applicable laws;

7.   Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury on all issues so triable.

Respectfully submitted,

David P. Meyer, Esq. (OH#0065202)
Trial Attorney
Matthew R. Wilson, Esq. (OH#0072925)
DAVID P. MEYER & ASSOCIATES CO., LPA
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

Daniel R. Solin, Esq. (NY#8675;
CT#101957; MA#556342)
*(pro hac vice* to be filed)
4731 Bonita Bay Blvd.
Unit 402
Bonita Springs, FL 34134

Counsel for the Plaintiffs

## NOTICE PURSUANT TO ERISA § 502(H)

To ensure compliance with the requirements of ERISA § 502(h), 29 U.S.C. § 1132(h), the undersigned hereby affirms that, on this date, a true and correct copy of this Complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, return receipt requested.

Dated: August 13, 2009

David P. Meyer, Esq. (OH#0065202)
Trial Attorney
Matthew R. Wilson, Esq. (OH#0072925)
DAVID P. MEYER & ASSOCIATES CO., LPA
1320 Dublin Road, Suite 100
Columbus, Ohio 43215
Telephone: (614) 224-6000
Facsimile: (614) 224-6066

Daniel R. Solin, Esq. (NY#8675;
CT#101957; MA#556342)
*(pro hac vice* to be filed)
4731 Bonita Bay Blvd.
Unit 402
Bonita Springs, FL 34134

Counsel for the Plaintiffs