IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MARK L. LEVY, D.D.S., *et al.*,
    Plaintiffs,

v.

CAIN, WATTERS &
ASSOCIATES, P.L.L.C.,
    Defendant.

Case No.: 2:09-cv-723
JUDGE GREGORY L. FROST
Magistrate Judge Mark R. Abel

## OPINION AND ORDER

This matter is before the Court for consideration of the Motion of Defendant Cain, Watters & Associates, P.L.L.C. ("Defendant" or "CWA") to Dismiss the Complaint or in the Alternative to Compel Arbitration and Stay the Action Pending Arbitration ("Defendant's Motion to Compel Arbitration and to Dismiss or Stay") (Doc. # 18), Plaintiffs' Opposition to Defendant's Motion to Compel Arbitration and to Dismiss or Stay (Doc. # 22), the Reply Memorandum in Support of Defendant's Motion to Compel Arbitration and to Dismiss or Stay (Doc. # 23), Plaintiffs' Motion to File Surreply *Instanter* (Doc. # 27), Defendant's Memorandum in Opposition to Plaintiffs' Motion for Leave to File Surreply (Doc. # 31), the Motion to Transfer Venue of Defendant ("Defendant's Motion to Transfer") (Doc. # 28), Plaintiffs' Memorandum in Opposition to Defendant's Motion to Transfer (Doc. # 32), and the Reply Memorandum in Support of Defendant's Motion to Transfer (Doc. # 33).

For the reasons that follow, the Court **GRANTS** Defendant's Motion to Compel Arbitration and to Dismiss or Stay and **STAYS** this action pending arbitration, **GRANTS** Plaintiffs' Motion to File Surreply *Instanter*, and **DENIES** Defendant's Motion to Transfer.

### I. Background

1

In October 2006, Plaintiffs Mark L. Levy, D.D.S., Cynthia S. Levy, the Mark L. Levy Trust, and Mark L. Levy as Administrator of the Stoneridge Dental Care Retirement Plan & Trust, entered into an investment advisory agreement ("Agreement") with Defendant, which is an investment advisor that is registered with the United States Securities and Exchange Commission.

On August 13, 2009, Plaintiffs filed this action. In the Complaint, Plaintiffs generally claim that Defendant mismanaged Plaintiffs' investments. The Complaint contains seven claims for relief:

> 1) Violation of the Investment Advisers Act of 1940, 15 U.S.C. § 80b-1 *et seq.*;
>
> 2) Declaratory relief under the Federal Declaratory Judgment Act, 28 U.S.C.§ 2201;
>
> 3) Common law breach of fiduciary duty;
>
> 4) Common law negligence;
>
> 5) Breach of fiduciary duty in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*;
>
> 6) Engaging in prohibited transactions in violation of ERISA; and,
>
> 7) Violations of the Ohio Securities Act. Ohio Rev. Code § 1707.01 *et seq.*

On September 30, 2009, in response to the Complaint, Defendant filed Defendant's Motion to Compel Arbitration and to Dismiss or Stay. That motion is ripe for review.

On October 28, 2009, the same day that Defendant filed its reply memorandum in support of Defendant's Motion to Compel Arbitration and to Dismiss or Stay, Defendant filed a Petition to Enforce Arbitration in the United States District Court for the Northern District of Texas, styled as *Cain, Watters & Associates, P.L.L.C. v. Mark L. Levy, D.D.S., et al.*, Case No.

3:09-cv-2049 ("Texas Case").

On November 3, 2009, Plaintiffs filed Plaintiffs' Motion to File Surreply *Instanter*. That motion is now at issue.

On November 6, 2009, Defendant filed Defendant's Motion to Transfer, which is also ripe for review.

## II. Plaintiffs' Motion to File Surreply *Instanter*

Local Civil Rule 7.2 permits the filing of a motion and memorandum in support, a memorandum in opposition, and a reply memorandum. The rule specifically states that "[n]o additional memoranda beyond those enumerated will be permitted except upon leave of court for good cause shown." S.D. Ohio Civ. R. 7.2(a)(2). Here, Plaintiffs request permission to file a surreply, contending that Defendant raised arguments for the first time in its reply memorandum filed in support of Defendant's Motion to Compel Arbitration and to Dismiss or Stay. Specifically, Plaintiffs argue that Defendant raised the issue that this action should be arbitrated by an entity other than the one specified in the Agreement and that the new arbitration entity should be appointed by a Texas district court. This Court agrees that these arguments were raised for the first time in Defendant's reply memorandum and therefore, finds that Plaintiffs have demonstrated good cause for filing an additional memorandum.

Accordingly, the Court **GRANTS** Plaintiffs' Motion to File Surreply *Instanter*.

## III. Defendant's Motion to Compel Arbitration and to Dismiss or Stay

In its motion, Defendant asks this Court to compel arbitration and to dismiss or stay this action pending arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"). In the alternative, Defendant asks this Court to dismiss pursuant to Rules 12(b)(1), (2), (3) & (6)

3

of the Federal Rules of Civil Procedure. Defendant, however, does not brief the Rule 12 motion in any way, so that portion of Defendant's motion does not warrant this Court's consideration. Thus, the Court will treat Defendant's motion only as a motion to compel arbitration and to dismiss or stay under the FAA.

A. **Standard of Review**

The FAA manifests "a liberal federal policy favoring arbitration agreements." *Masco Corp. v. Zurich American Ins. Co.*, 382 F.3d 624, 626 (6th Cir. 2004) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Id.* at 626-27 (citing *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3 & 4)).

The Sixth Circuit explains:

> "Before compelling an unwilling party to arbitrate, the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch*, 315 F.3d at 624. "As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone*, 460 U.S. at 24-25 (1983). "There is a general presumption of arbitrability, and any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 576-77 (6th Cir. 2003) (quoting *AT & T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986)).

*Masco Corp.*, 382 F.3d at 627.

B. **Analysis**

The Agreement contains the following language that is relevant to the issues before the

Court:

Any "dispute," as defined hereinafter, arising out of or relating hereto, between you and CWA, the services to be provided by CWA hereunder, or any other services provided by or on behalf of CWA or any of its subcontractors or agents to you or at your request (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) shall be resolved in accordance with the dispute resolution procedures set forth hereafter, which constitutes the sole methodologies for the resolution of all such disputes. By operation hereof, you and CWA agree to forego litigation over such disputes in any court and waive, prospectively, any right so to pursue such disputes into litigation. Mediation and arbitration shall take place in Dallas, Texas. Either party may seek to enforce any written agreement reached by you and CWA during mediation, or to confirm and enforce any final award entered in arbitration, in any court having jurisdiction.

The following procedures are the sole methodologies to be used to resolve any controversy, claim, dispute, alleged cause of action, claimed liability, claimed injury, and any other claimed unfulfilled obligation of you and CWA, hereinafter called "dispute."

. . . .

THE PARTIES AGREE THAT ALL DISPUTES OF EVERY TYPE AND MATTER WHICH MAY ARISE BETWEEN YOU AND CWA, INCLUDING ANY DISPUTES REGARDING THE SCOPE OF THIS ARBITRATION AGREEMENT, AND WHICH ARE NOT RESOLVED THROUGH MEDIATION, SHALL BE RESOLVED BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM UNDER THE CODE OF PROCEDURE THEN IN EFFECT. ANY AWARD OF THE ARBITRATOR MAY BE ENTERED AS A JUDGMENT IN ANY COURT HAVING JURISDICTION. THE ARBITRATION PROCEEDINGS SHALL TAKE PLACE IN DALLAS, TEXAS. IN THE EVENT A COURT HAVING JURISDICTION FINDS ANY PORTION OF THIS AGREEMENT FOR ARBITRATION UNENFORCEABLE, THAT PORTION SHALL NOT BE EFFECTIVE AND THE REMAINDER OF THE AGREEMENT FOR ARBITRATION SHALL REMAIN EFFECTIVE. INFORMATION MAY BE OBTAINED AND CLAIMS MAY BE FILED AT ANY OFFICE OF THE NATIONAL ARBITRATION FORUM, WWW.ARBITRATION-FORUM.COM, OR AT P.O. BOX 50191, MINNEAPOLIS, MN 55045. THIS AGREEMENT FOR ARBITRATION SHALL BE GOVERNED BY AND INTERPRETED UNDER THE FEDERAL ARBITRATION ACT, 9 U.S.C. SECTIONS 1-16.

> BY SIGNING THE ENGAGEMENT LETTER AND ADVISORY CONTRACT, AND THESE ADDITIONAL TERMS AND CONDITIONS, THE PARTIES ARE GIVING UP ANY RIGHT THEY MIGHT HAVE TO SUE EACH OTHER IN COURT AND HAVE THEIR CASE DECIDED BY A JUDGE OR JURY.

(Doc. # 18-1 at 12-13) (emphasis in original).

**1. Arbitrable Claims**

The parties agree that the claims brought before this Court (except for possibly the Investment Advisors Act claim discussed below) are subject to the arbitration clauses in the Agreement, which requires that the claims be arbitrated in Dallas, Texas. The issue before the Court involves the clause's requirement that the National Arbitration Forum ("NAF") conduct the arbitration. The parties explain to the Court that the NAF is no longer available to arbitrate this type of case, although it is still a functioning entity. Thus, Defendant argues that, pursuant to the severability clause in the Agreement, the requirement that NAF conduct the arbitration should be severed, a substitute arbitrator be appointed, and the remaining provisions should be enforced. Plaintiffs, however, argue that the arbitration provision is void because the NAF is no longer available. The Court agrees with Defendant.

> Section 5 of the FAA provides:
>
> If in the agreement provision be made for a method of naming or appointing an arbitrator . . . such method shall be followed . . . or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein.

9 U.S.C. § 5. The Agreement specifically states that its arbitration provision is governed by and must be interpreted under the FAA. (Doc. # 18-1 at 13) ("THIS AGREEMENT FOR

ARBITRATION SHALL BE GOVERNED BY AND INTERPRETED UNDER THE FEDERAL ARBITRATION ACT, 9 U.S.C. SECTIONS 1-16.) (emphasis in original).

Relying on Section 5 of the FAA, the United States Court of Appeals for the Eleventh Circuit, in a case directly on point, explained:

> [Plaintiff] also argues that the arbitration clause is void because the specified forum, the National Arbitration Forum (NAF), had dissolved. This argument is without merit. Section 5 of the FAA provides a mechanism for appointment of an arbitrator where "for any [] reason there shall be a lapse in the naming of an arbitrator . . . ." 9 U.S.C. § 5 (West 2000). The unavailability of the NAF does not destroy the arbitration clause.
>
> Where the chosen forum is unavailable, however, or has failed for some reason, § 5 applies and a substitute arbitrator may be named. *Astra Footwear Indus. v. Harwyn Int'l, Inc.*, 442 F. Supp. 907, 910 (S.D.N.Y.), *aff'd*, 578 F.2d 1366 (2d Cir. 1978). Only if the choice of forum is an integral part of the agreement to arbitrate, rather than an "ancillary logistical concern" will the failure of the chosen forum preclude arbitration. *See Zechman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 742 F. Supp. 1359, 1364 (N.D.Ill.1990) (citing *Nat'l Iranian Oil Co. v. Ashland Oil*, 817 F.2d 326 (5th Cir.1987)). Here there is no evidence that the choice of the NAF as the arbitration forum was an integral part of the agreement to arbitrate. [Plaintiff]'s argument that the arbitration agreement is void because the NAF was unavailable must fail.

*Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000). *See also McMullen v. Meijer, Inc.*, 166 Fed. Appx. 164, 169 (6th Cir. 2006) (affirming the trial court's decision to require arbitration even though extensive arbitrator selection provisions were invalidated and noting that an additional consideration in whether to sever provisions from an arbitration agreement is the preference indicated by the courts to favor arbitration over litigation).

In the instant action, like in *Brown*, the Court finds no evidence that the choice of the NAF as the arbitration forum was an integral part of the agreement to arbitrate. Our sister district court, in a second case directly on point, explained:

> As a general rule, when the arbitrator named in the arbitration agreement cannot

7

or will not arbitrate the dispute, the court does not void the arbitration agreement. Instead, it appoints a different arbitrator, as provided in the Federal Arbitration Act above. *See Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000).

The exception to this rule occurs when "it is clear that the failed term is not an ancillary logistical concern but rather is as important a consideration as the agreement to arbitrate itself." *Id.* (quoting *McGuire, Cornwell & Blakey v. Grider*, 771 F. Supp. 319, 320 (1991) (emphasis added)). In such situations, the Court will not sever the failed term from the rest of the agreement and the entire arbitration provision fails. *Id.* "Whether the agreement to arbitrate is entire or severable turns on the parties' intent at the time of the agreement was executed, as determined from the language of the contract and the surrounding circumstances." *Great Earth Cos. v. Simons*, 288 F.3d 878, 890 (6th Cir. 2002).

*Adler v. Dell, Inc.*, No. 08-cv-13170, 2009 U.S. Dist. LEXIS 112204, *5-6 (E.D. Mich. Dec. 3 2009).

Examining language that mirrors the contractual language before this Court, the *Adler* court determined that arbitration by the NAF was not an integral part of the agreement to arbitrate, but was instead an ancillary logistical concern. The Court finds *Adler's* reasoning on point and persuasive:

In this case, the language of the contract is ambiguous on the intent of the parties in designating NAF, to administer the arbitration. The clause, "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF)" may either refer to the parties' intent to arbitrate all disputes or to the intent of the parties to bring arbitration solely before NAF, or both. At every pass through these words, it is impossible to discern whether the parties intended to embrace arbitration as their exclusive and final recourse for disputes while identifying NAF as a secondary matter to administer the process, or whether they intended NAF arbitration only to be their exclusive and final recourse for disputes. Both interpretations have merit, but there is nothing in the language to indicate which is the intended interpretation.

Two aspects of the agreement offer some support for the conclusion that the intent to arbitrate was paramount, and the designation of NAF secondary. First, the agreement requires NAF rules be used. This would appear to be mere surplusage, except in the case of a substitute arbitration forum, and Adler offered no reason to

8

> conclude that NAF rules cannot be applied by a substitute arbitrator. Second, the agreement specifically limits the arbitration process to the customer and Dell, which adds emphasis to the process agreed upon, as opposed to the designated forum.
>
> Further, the agreement lacks any provision for a course of conduct in the event that NAF is unavailable or unwilling to arbitrate disputes between the parties. The lack of an alternative to NAF in the agreement may be taken as indicating a primary intent to arbitrate all disputes, or on the other hand, that the parties contemplated arbitration only if administered by NAF. This too can cut both ways and leaves the court guessing at the intent of the parties. In any event, the agreement falls far short of establishing the exception stated in *Brown* that arbitration will fail only if it is "clear" that the term in dispute, *i.e.* that the exclusive and final resolution of all disputes between the parties must be administered by NAF, is "as important a consideration as the agreement to arbitrate itself."

*Adler*, 2009 U.S. Dist. LEXIS 112204, at *7-8.

For these exact reasons: ambiguous contract language, no apparent reasons why the NAF rules cannot be applied by a substitute arbitrator, and the Agreement specifically limiting the arbitration process to the client and CWA, this Court too concludes that it is far from "clear" that arbitration administered by NAF is "as important a consideration as the agreement to arbitrate itself." *Id.* Moreover, the Court finds the parties' intent to arbitrate is further evidenced by the severability language that provides that the failure or invalidity of one provision shall have no effect on "the remainder of the agreement for arbitration." (Doc. # 18-1 at 13.) Consequently, the Court will sever the requirement that the NAF conduct the arbitration and enforce the remaining arbitration provision.

With regard to the appointment of the substitute arbitration forum, Defendant argues that "because the Sixth Circuit has interpreted FAA § 4 to mean that only the district court in the district where the arbitration will occur is permitted to appoint substitute arbitrators" this case should be dismissed in favor of the Texas Case. (Doc. # 28 at 5-6.) Defendant relies on *Cowden*

9

*Mfg. Co. v. Koratron Co.*, 422 F.2d 371 (6th Cir. 1970) for support of this legal proposition. *Cowden*, however, does not stand for such a proposition.

In *Cowden*, the plaintiff was a licensee under a patent owned by the defendant and sued for alleged violations of federal antitrust, patent, and trademark laws in federal district court in Kentucky. The defendant did not request that the Kentucky court stay the action and compel arbitration and instead filed a demand for arbitration in a district court in California, the location that the arbitration provision required arbitration to be held. The Kentucky court denied the plaintiff's request for an injunction prohibiting the California court from ruling on the request for arbitration. The Sixth Circuit's reasoning was based on two facts that are not present in this action.

First, the court explained that the Kentucky district court did not abuse its discretion in denying the temporary injunction and in staying the proceedings because: "The District Court stated that the question of the applicability of the arbitration clause to the matters presented had to be determined, and since that question was already at issue in the District Court in California, it declined to enjoin that action." *Cowden*, 422 F.2d at 372. Here, however, the "question of the applicability of the arbitration clause . . . was already at issue" before this Court–not the Texas court.

Second, and dispositive in itself, the Sixth Circuit stated that the court in "California, has exclusive jurisdiction over the arbitration issue, which is presently before it, because such was provided for by the parties in their license agreement." *Id.* In this case, the Agreement does not give the Texas court exclusive jurisdiction over the arbitration issue. The Agreement provides that Texas is the location that arbitration must take place but provides that "IN THE EVENT A

COURT HAVING JURISDICTION FINDS ANY PORTION OF THIS AGREEMENT FOR ARBITRATION UNENFORCEABLE, THAT PORTION SHALL NOT BE EFFECTIVE AND THE REMAINDER OF THE AGREEMENT FOR ARBITRATION SHALL REMAIN EFFECTIVE." Thus, unlike the agreement in *Cowden*, the severability portion of the Agreement specifically contemplates any court of competent jurisdiction to have the ability to determine the enforceability of the arbitration provision.

Therefore, the Court will follow the lead of the *Adler* Court, and "instructs the parties to confer and agree on an alternate arbitrator who will apply the rules of NAF under its Code of Procedure, if possible." *Adler*, 2009 U.S. Dist. LEXIS 112204, at *13. If the parties fail to come to an agreement within thirty days from the date of entry of this order, either Defendant or Plaintiffs may submit an application to this Court identifying proposed arbitrators for appointment. *See id.* The Court will then appoint the arbitrator. *See* 9 U.S.C. § 5 ("if for any other reason there shall be a lapse in the naming of an arbitrator . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator").

### 2. The Investment Advisors Act Claims

In a footnote in Plaintiffs' opposition memorandum, Plaintiffs argue that this Court need not address whether to stay or dismiss this action pending arbitration because Plaintiffs' claims under the Investment Advisors Act would not be subject to arbitration and, if they prevail on those claims, their obligation to arbitrate will be rescinded. In reply, Defendant argues that Plaintiffs' proposed approach, that this Court to decide the merits of their Investment Advisors Act claims in order that the Court can determine the arbitrability of their claims, has been rejected by the Supreme Court, which instructed: "in deciding whether the parties have agreed

11

to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 649 (1986).

This Court is bound by *AT&T Tech.*, which directs it to allow the arbitration to occur before deciding the merits of any of the underlying claims. This decision leads the Court to consider whether to stay this action pending the outcome of the arbitration or to dismiss it.

### 3. Stay or Dismiss

Pursuant to the FAA:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending . . . shall . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.

Defendant argues that, notwithstanding the plain language of the statute, the Sixth Circuit, has interpreted Section 3 as allowing dismissal of cases in which all claims are referred to arbitration. (Doc. # 18 at 8) (citing *Hensel v. Cargill*, Inc., 1999 U.S. App. LEXIS 26600, 1999 WL 993775, at *4 (6th Cir. Ohio Oct. 19, 1999)). Thus, Defendant requests that the Court dismiss, as opposed to stay, this action because it claims that there are no claims that are not arbitrable. Defendant's argument is not well taken.

The parties are not in agreement as to the arbitrability of the Investment Advisory Act claim. This Court, however, as stated above, is prohibited from determining the merits of any Investment Advisory Act claim that may be properly before it until the arbitration process is complete. *See AT&T Tech.,* 475 U.S. at 649. Accordingly, the Court **GRANTS** Defendant's Motion to Compel Arbitration and to Dismiss or Stay as it relates to its request to stay this action

pending arbitration.

## IV. Defendant's Motion to Transfer

Defendant moves to transfer this action pursuant to the Agreements and 28 U.S.C. § 1404(a).

**1. The Agreement**

Defendant argues that the Agreement contains a "Forum Selection Clause" that "mandates Dallas, Texas as the location in which proceedings are to be held to resolve the dispute" between Plaintiffs and Defendant. (Doc. # 28 at 6.) This Court disagrees.

Defendant argues that "[t]his Court should grant CWA's motion to transfer because the forum-selection clause contained in the Agreements mandates Dallas, Texas as the sole forum for arbitration." (Doc. # 28 at 6.) Further, Defendant contends that:

> The forum selection clause at issue is not only valid and enforceable, but also exclusive and mandatory. . . . Because the Agreement states that "ALL DISPUTES OF EVERY TYPE AND MATTER" shall be resolved by arbitration and that "THE ARBITRATION PROCEEDINGS SHALL TAKE PLACE IN DALLAS, TEXAS," the forum-selection clause is clear and should be enforced according to its terms.

(Doc. # 28 at 7) (internal citations omitted). Further, Defendant contends:

> In short, this Court should give effect to the parties' Agreements by transferring this action to the United States District Court for the Northern District of Texas so that court can compel arbitration in Dallas, Texas. *See, e.g., Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995) (directing inter-district transfer of case involving arbitration obligation). *See also Cowden Mfg. Co. v. Koratron Co.*, 422 F.2d 371 (6th Cir. 1970)[1] (approving stay of Kentucky district court action pending resolution of arbitration issues by California district court); Federal Arbitration Association ("FAA") §§ 4 & 5, codified at 9 U.S.C. §§ 4 & 5, respectively.

---

[1] The Court's conclusion *supra* related to *Cowden* also supports the Court's conclusion here that the arbitration forum selection provision is not a general forum selection clause.

13

(Doc. # 33 at 2-3.) Defendant then concludes that the arbitration forum selection clause mandates that this Court transfer this action to the Northern District of Texas so that court can compel arbitration in Dallas, Texas. Defendant's arguments miss the mark.

While Defendant's statements are accurate reflections of the arbitration forum selection provision and the law related to the enforcement of arbitration provisions, they do nothing to support Defendant's conclusion that the clause is a general forum selection clause. As Plaintiffs correctly argue, the plain language of this clause limits its applicability to the place where arbitration is to proceed: "THE ARBITRATION PROCEEDINGS SHALL TAKE PLACE IN DALLAS, TEXAS." (Doc. # 18-1 at 13) (emphasis in original). Nowhere does the clause in any way limit the place where a civil action in court can be filed or maintained.

Indeed, as Plaintiffs again correctly argue, the limited reach of the clause is further illustrated by the use of the term "a court having jurisdiction" in a later clause in the Agreement. The severability clause reads: "IN THE EVENT A COURT HAVING JURISDICTION FINDS ANY PORTION OF THIS AGREEMENT [FOR ARBITRATION] UNENFORCEABLE, THAT PORTION SHALL NOT BE EFFECTIVE AND THE REMAINDER OF THE AGREEMENT [FOR ARBITRATION] SHALL REMAIN EFFECTIVE." *Id.* (emphasis in original). The use of the term "a court having jurisdiction" – rather than, for instance, "a court in Dallas, Texas having jurisdiction" – implies that the clause only limits the place of arbitration; it does not limit the place where civil actions may be filed or maintained.

Consequently, the Court concludes that the arbitration forum selection clause does not dictate the location of any civil action that may be brought under the Agreement or as a result of the Agreement. Accordingly, the Court **DENIES** Defendant's Motion to Transfer to the extent

that it requests transfer based upon the Agreement.

## 2. 28 U.S.C. § 1404

"The party seeking transfer under 28 U.S.C. § 1404 bears the burden of establishing that the balance of relevant factors weighs 'strongly in favor of transfer.' " *Candela Mgmt. Group v. Taco Maker, Inc.*, No. 2:08-CV-1138, 2009 U.S. Dist. LEXIS 90152, at *9 (S.D. Ohio Sept. 11, 2009) (citing *Centerville ALF v. Balanced Care Corp.*, 197 F. Supp.2d 1039, 1049 (S.D. Ohio 2002) (quoting *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)). "Ultimately, however, the decision whether to transfer venue under § 1404(a) is committed to the sound discretion of the trial court." *Id.* (citing *Midwest Motor Supply Co. Inc. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991)).

> The Sixth Circuit instructs:
>
> Section 1404(a) provides that "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id.* Congress intended to give district courts the discretion to transfer cases on an individual basis by considering convenience and fairness. [*Stewart Org., Inc., v. Ricoh Corp.*,] 487 U.S. [22,] 29 [(1988)] (citing *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The district court must weigh a number of case-specific factors such as the convenience of parties and witnesses, "public-interest factors of systemic integrity," and private concerns falling under the heading "the interest of justice." 487 U.S. at 30.

*Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002).

There is no dispute that this action might have been brought in the Northern District of Texas. Thus, the Court moves directly to the parties' arguments regarding the case-specific factors. "[W]hen balancing those various factors, the Court does not start with the assumption that the case should proceed in whichever forum is slightly more advantageous to the parties or the witnesses." *Painting Company, Plaintiff, v. District Council No. 9, International Union of*

15

*Painters and Allied Trades, A.F.L.*, No. 2:07-cv-550, 185 L.R.R.M. 2462, 2008 U.S. Dist. LEXIS 85803, at *58 (S.D. Ohio 2008). Instead, "it has long been held that the plaintiff's choice of a forum is entitled to considerable weight, and, consequently, the party moving for a change of venue must demonstrate that the interests served by 28 U.S.C. § 1404(a) clearly favor a change of venue." *Id.* at *59 (citing *Cent. Inv. Corp. v. Mut. Leasing Assoc., Inc.*, 523 F. Supp. 74, 79 (S.D. Ohio 1981)). *See also Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). "Of course, although 'a plaintiff's choice of forum should be given weight when deciding whether to grant a motion to change venue, this factor is not dispositive.' " *Id.* (quoting *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998)).

### a. Private interest factors

With regard to the case-specific factors related to the convenience of the parties, this is usually expressed in terms of a number of private factors, such as the relative ease of access to sources of proof, the availability of compulsory process for attendance of the unwilling witnesses, and the cost of obtaining attendance of willing witnesses, and other practical problems that make trial of a case easy, expeditious, and inexpensive. *See Painting Co.*, 2008 U.S. Dist. LEXIS 85803, at *61 (citing *Hanning v. New England Mut. Life Ins. Co.*, 710 F. Supp. 213, 214 (S.D. Ohio 1989)).

In the instant action, Defendant argues that the Northern District of Texas will be more convenient for the parties and witnesses because CWA, a Texas corporation, consists of several persons, all of whom reside in the Dallas, Texas area. The only other witnesses in this case, Defendant contends, are the Mark and Cynthia Levy, who reside in Columbus, Ohio. Plaintiffs

argue that Defendant regularly reaches into Ohio to solicit investment business and, indeed, is currently in business relationships with many Ohio residents who may be called upon to testify in this action. Further, Plaintiffs correctly argue that, although Defendant's employees may be called as witnesses, "[t]he convenience of witnesses who are employees of a party is generally not given as much consideration as to other witnesses." *Fusi v. Emery Worldwide Airlines, Inc.*, 183 L.R.R.M. 2225, 2007 WL 4207863 at *5 (S.D. Ohio 2007) (citing *Zimmer Enter., Inc. v. Atlandia Imports, Inc.*, 478 F. Supp.2d 983, 991 (S.D. Ohio 2007)). Thus, this factor does not weigh in favor of transfer.

Defendant further argues that the ease of access to sources of proof weighs heavily in favor of venue in Texas because that is where Defendant's main operations and principal place of business are located. However, "a generalized assertion by a defendant that documents are located in the proposed transferee district is generally insufficient to support a change of venue." *Painting Co.*, 2008 U.S. Dist. LEXIS 85803, at *59-60 (citing *Audi AG v. D'Amato*, 341 F. Supp.2d 734, 751 (E.D. Mich. 2004)). "Rather, the defendant must show a specific hardship involved with conducting discovery in the plaintiff's chosen district." *Id.* at 60 (citing *AMF, Inc. v. Computer Automation, Inc.*, 532 F. Supp. 1335 (S.D. Ohio 1982) and *Richards v. Upjohn Co.*, 406 F. Supp. 405 (E.D. Mich. 1976)). Here, Defendant has not shown any specific hardship with conducting discovery in this district. Therefore, this factor does not weigh in favor of transferring this case to the Northern District of Texas.

The last private factor that Defendant touches on is the fact that the parties contracted to mediate and arbitrate any disputes in Texas, which appears to weigh in favor of transfer. However, the Agreement also specifically provides that certain litigation may be held in any

court with jurisdiction. Consequently, this factor does not weigh in favor of either forum.

Based on the foregoing, the Court concludes that Defendant has failed to show that the balance of relevant private factors weigh strongly in favor of transfer.

### b. Public interest factors

Next the Court examines the public interest factors, that include docket congestion, the burden of trial to a jurisdiction with no relation to the cause of action, the value of holding trial in a community where the public affected live, and the familiarity of the court with controlling law. *Candela Mgmt. Group*, 2009 U.S. Dist. LEXIS 90152, at *10 (citing *Gilbert*, 330 U.S. at 508).

Here, Defendant has not claimed that the Southern District of Ohio's docket cannot accommodate this case or that the Southern District of Ohio is any more congested than the Northern District of Texas. Therefore, this factor does not weigh in favor of transfer.

Further, there is no burden of trial to a jurisdiction with no relation to the cause of action since both Ohio and Texas have relations to this action. However, there is value to holding a trial in this community, where the individual Plaintiffs reside and where the business Plaintiff is located. Moreover, Defendant reached into Ohio to solicit Plaintiffs' business and Ohio certainly has an interest in regulating business conducted in Ohio. Thus, this factor does not weigh in favor of transfer to the Northern District of Texas.

Last, Defendant argues that the pendency of the Texas Case weighs in favor of transfer because transfer will favor judicial economy. However, because this Court has granted Defendants request to compel arbitration, the Texas Case is no longer needed to compel Plaintiffs to arbitrate. Consequently, this factor does not weigh in favor of transfer.

18

In sum, the Court easily concludes that Defendant has failed to show that the balance of relevant private factors weigh strongly in favor of transfer.

### c. Conclusion of Motion to Transfer

Plaintiffs have selected this forum and their choice is entitled to considerable weight. With regard to the private and public interest factors, Defendant has not shown that they weigh strongly, if at all, in favor of a transfer to the Northern District of Texas. Accordingly, the Court **DENIES** Defendant's Motion to Transfer to the extent that it requests transfer based 28 U.S.C. § 1404..

## V. Conclusion

Based on the foregoing, the Court **GRANTS** Defendant's Motion to Compel Arbitration and to Dismiss or Stay (Doc. # 18), **GRANTS** Plaintiffs' Motion to File Surreply *Instanter* (Doc. # 27), and **DENIES** Defendant's Motion to Transfer (Doc. # 28). This case is hereby **STAYED** pending the outcome of the arbitration proceedings.

The parties are **ORDERED** to confer and agree on an alternate arbitrator who will apply the rules of NAF under its Code of Procedure, if possible, and hold the arbitration proceedings in Dallas, Texas. If the parties fail to come to an agreement within thirty (30) days from the date of entry of this Opinion and Order, either Defendant or Plaintiffs may submit an application to this Court identifying a proposed arbitrator or arbitrators for appointment and this Court will determine the arbitrator based upon that application. If no application for the appointment of an arbitrator is filed within thirty days of the date of this Opinion and Order, the Clerk is **DIRECTED** to **ADMINISTRATIVELY CLOSE** this action. The parties shall advise this Court once the arbitration is concluded so that a status conference on the remaining issues, if

any, may be scheduled.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE